# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **TIMOTHY DENNIS POWERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:13-cv-00395** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17. Plaintiff has filed a Reply. Docket No. 20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on October 5, 2009, alleging that he had been disabled since May 15, 2007, due to post traumatic stress disorder, knee pain, asthma, left eye problems, high blood pressure, prostate problems, and problems with alcohol abuse. *See, e.g.,* Docket No. 10, Attachment ("TR") 71, 122-28. Plaintiff's application was denied both initially (TR 63) and upon reconsideration (TR 64). Plaintiff subsequently requested (TR 76-77) and received (TR 93-110) a hearing. Plaintiff's hearing was conducted on January 13, 2012, by Administrative Law Judge ("ALJ") Brian Dougherty. TR 26. Plaintiff and vocational expert ("VE"), Pedro Roman, appeared and testified. *Id.*

On February 7, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 6-25. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since May 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); benign prostatic hypertrophy, gastroesophageal reflux disease (GERD), bilateral knee, left shoulder and right wrist, status post surgeries; osteoarthritis; post traumatic stress disorder (PTSD); depression; and alcohol dependence (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform lifting and/or carrying of 20 pounds occasionally and 10 pounds frequently; standing and/or walking of 3 hours in an 8 hour workday; sitting of 6 hours in an 8 hour workday; no overhead reaching; occasional right hand reaching; frequent left hand reaching; occasional pushing and/or pulling; occasional operation of foot controls with the left foot; frequent operation of foot controls with the right foot; no climbing, kneeling and crawling; occasional balancing, stooping and crouching; no unprotected heights; the avoidance of exposure to dust, odors, fumes, pulmonary irritants, temperature extremes, and vibrations; the avoidance of exposure to more than moderate noise; he can perform simple, multi-step tasks; and have occasional contact with the public.

6.      The claimant is capable of performing past relevant work as a material scheduler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2007, through the date of this decision (20 CFR 404.1520(f)).

TR 11-21.

On April 5, 2012, Plaintiff timely filed a request for review of the hearing decision. TR 5. On February 21, 2013, the Appeals Council issued a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[1] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to properly consider the finding of the Department of Veteran's Affairs ("VA") that Plaintiff was 100% disabled due to PTSD and erroneously minimized his mental impairments; (2) improperly "evaluated and assessed" Plaintiff's credibility; (3) made an erroneous RFC determination because he "appeared to focus primarily on the physical capabilities of [Plaintiff] and gave minimal instruction as to his mental capabilities" and considered only the limited parts of the evidence that supported a finding of not disabled"; and (4) did not consider all of Plaintiff's severe impairments. Docket No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Department of Veterans' Affairs' Disability Determination and Consideration of Mental Impairments

Plaintiff argues that the ALJ failed to properly consider the fact that he was assessed as 100% disabled by the VA and erroneously minimized his mental impairments. Docket No. 15 at 7. Plaintiff maintains, "Even if [the VA's] findings and ratings were not binding on the Commissioner, the opinions regarding the Plaintiff's limitations warranted an evaluation by the ALJ." *Id.* at 7. Plaintiff contends that the ALJ erred in not discussing the weight, if any, he accorded to the VA findings. *Id.* Plaintiff asserts that, by failing to consider the VA evaluation, the ALJ minimized the severity of Plaintiff's PTSD. *Id.* at 8.

Defendant responds that the "ALJ did consider the VA rating and the mental impairments." Docket No. 17 at 8. Defendant notes that the ALJ discussed the VA records pertaining to depression, PTSD, and alcohol dependence. *Id.* Defendant asserts that the ALJ properly considered the medical reports, Plaintiff's activities, and Plaintiff's non-compliance with treatment when ultimately finding that Plaintiff had moderate mental health limitations that did not preclude him from working. *Id.* Defendant argues that although Plaintiff may disagree with the ALJ's determination, the ALJ considered the evidence of record. *Id.* Defendant also notes, "the VA and SSA disability criteria are not the same," such that the ALJ was not bound by

the VA's disability determination. *Id.*

In his Reply, Plaintiff reiterates his prior arguments and concedes that the VA and SSA criteria may differ, but argues that the VA's "medical records nonetheless support his claim from a Social Security perspective." Docket No. 20 at 2. Plaintiff contends that the "medical evidence as a whole supports a finding of disabled." *Id*. at 3.

As an initial matter, the VA's decision is not binding on the ALJ:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its own rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 CFR § 404.1504.

Although the VA's determination is not binding on the ALJ, the ALJ "nonetheless at least must consider it" when reviewing the record in its entirety and reaching his disability determination. *See, e.g., Rothgeb v. Astrue*, 626 F. Supp. 2d 797, 809 (S.D. Ohio 2009). Additionally, the ALJ must "articulate reasons for the amount of weight he or she assigns to that decision." *Id*.

The ALJ specifically and in detail recounted Plaintiff's treatment records from the VA Hospital and VA Outpatient Clinic. *See* TR 13-20, *citing* 209-329, 330-451, 493-562, 563-1087. Additionally, the ALJ explicitly mentioned the VA's determination that it found Plaintiff to be 100% disabled due to PTSD, and explained that he did not accept that determination because the VA and the SSA have different regulatory standards for determining disability. TR 12-13. With regard to Plaintiff's mental impairments, including his PTSD, the ALJ stated:

Regarding mental impairment severity, the claimant testified he had depression with PTSD; that he had seen a friend blown up in Vietnam; that when his depression got bad, he would go stay with his daughter.  In May 2008, the medical evidence documents he denied any loss of interest in activities, depression, nightmares, anxiety attacks, hallucinations, delusions, or suicidal ideation/homicidal ideation (SI/HI) thoughts, plans and intentions. In August 2008, the VAMC diagnosed PTSD and a global assessment of functioning (GAF) of 55, which is generally consistent with moderate mental limitation.  He had no thought or perceptual disturbances, no SI/HI, his cognition was intact; his immediate and recent memory was good, his remote memory took additional time to retrieve, his concentration was "good" with minimal distractions, and his insight and judgment were good and intact.  (Exhibits 1F, 2F, 12F, pp 439, 457)  On January 13, 2009, the VAMC diagnosed PTSD and depressive disorder.  By October 9, 2009, the VAMC was diagnosing active, chronic PTSD with depression.  On November 2, 2009, with five months of sobriety, his insight, judgment and thought process were improved. Diagnoses included PTSD and chronic depression with GAF of 65, which is generally consistent with moderate mental limitation. (Exhibits 1F, 2F) In December 2009, his mood was "pretty good," his judgment and insight were "good," and thought process was linear, logical and goal oriented.  He denied loss of interest in activities, memory loss, depression, nightmares, anxiety attacks, hallucinations, delusions, and denied suicidal ideation/homicidal ideation (SI/HI), plans or intents.  (Exhibit 12F) On February 8, 2010, the claimant reported he had not had intrusive thoughts about Vietnam until one week prior.  (Exhibit 12F) On June 7, 2010, a VAMC physician told the claimant his rigid thinking and arrogance negatively influenced his ability to progress.  Diagnoses included PTSD and alcohol dependence with a GAF of 65, which is generally consistent with "mild" mental limitation.  He had good eye contact, normal speech, no psychomotor disturbance, a mood that was "not depressed . . ."  He did say he was not having a good time.  He reported intrusive thoughts of Vietnam.  (Exhibit 11F) In April 2011, he started drinking again and "stopped taking his antidepressants."  GAF was reported as 65, which is generally consistent with "mild" mental limitations.  In September 2011, GAF was 65.  In October 2011, he noted that his psychotropic medications were helpful and denied any severe decompensation of depressed mood; that he stayed busy to help prevent negative and intrusive thoughts.  Trazodone helped him sleep without bad dreams and he awoke without recollection.  He had self-increased

Trazodone to 300 mg to maintain five and six hours sleep at night. His mood was "fine." GAF was 60 and within a few days, GAF was 65. On November 15, 2011, mental status was "normal." In December 2011, the claimant was participating in support group for PTSD sufferers and he was able to share one or two of his traumatic war experiences. An attending TVHCS physician diagnosed PTSD with a GAF of 50. Due to alcohol relapse, medical recommendations included going into an alcohol/drug treatment program. His symptoms included bad memories, flashbacks, and recurrent and intrusive thought of the foxhole, the mud and shells lying on the ground. In December 2011, a 15-point global assessment of functioning (GAF) drop and increased PTSD symptoms correlated with his brief relapse into alcohol. (Exhibit 12F)

TR 15-16, *citing* TR 209-329, 330-451, 457, 493-562, 563-1087.

As can be seen, the ALJ was aware of, considered, and discussed Plaintiff's mental health treatment at the VA, and his PTSD in particular. As discussed above, the ALJ is not bound by the VA's determination that Plaintiff was 100% disabled due to PTSD, because the VA and SSA have different standards for determining disability. Rather, the ALJ is required to consider the evidence of record in its entirety, reach a reasoned decision that is supported by substantial evidence, and provide a rationale for that decision. The ALJ in the case at bar did just that. The ALJ's decision evidences repeated consideration of Plaintiff's VA mental health treatment records, which included treatment for his PTSD. TR 15-16. Plaintiff's arguments on this point fail.

## 2. Plaintiff's Credibility

Plaintiff contends that in finding his subjective complaints not fully credible, the ALJ improperly made conclusory statements that he had considered Plaintiff's subjective complaints

and the requisite factors set forth in SSR 96-7p.  Docket No. 15 at 9-10.  Plaintiff essentially

argues that the ALJ should have specifically addressed whether he found Plaintiff's testimony to

be credible, the weight he accorded to Plaintiff's testimony, and the specific evidence considered

relating to each requisite factor.  *Id.*  Plaintiff additionally contends that the ALJ erroneously

"detract[ed] from the Plaintiff's credibility based on the fact that he has been able to perform

some activity on a very minimal basis," and that, "[b]y focusing on these few activities of daily

living, the ALJ ignored the medical evidence, which shows that the Plaintiff is disabled."  *Id.*

Accordingly, Plaintiff argues that the ALJ's decision was not supported by substantial evidence.

*Id.*

Defendant responds that "the ALJ's credibility findings were not merely conclusory," but

rather, were based on express findings that "Plaintiff's activities were inconsistent with his

allegation of being disabled."  Docket No. 17 at 10.  Defendant argues that the ALJ properly

considered the medical and testimonial evidence, including Plaintiff's non-compliance with

treatment, and appropriately relied on that evidence in making his credibility determination.  *Id.*

Defendant asserts, therefore, that the ALJ "had a sound basis for not believing all of the

Plaintiff's allegations."  *Id.*

Plaintiff does not address this contention in his Reply.  *See* Docket No. 20.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective

allegations:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be

expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 CFR § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ ultimately found that: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely

credible." TR 18 (underlining original).  Specifically, the ALJ explained:

> Inconsistencies of record detract from credibility.  For example, activities of daily living are not consistent with allegations of disability, such as his ability to walk, jog, weight train, take walks, care for his apartment, take care of personal needs, read his mail, email people, study a workbook, attend classes and meetings, prepare his own meals, attend church, perform household chores, such as laundry, ironing, and grass mowing.  In addition, he has the ability to drive a car, go out alone, shop, pay bills, and take public transportation.  It is noted he reported he had not attempted to obtain vocational rehabilitation services, employment services or other support services that could help him get back to work.  (Exhibit 3E)  He also testified he could walk for 15 minutes, stand for 10 minutes, sit for 45 minutes at one time maximum, and could lift 15 pounds.  However, Dr. Surber indicated he could walk for three hours at one time, stand for three hours at one time, sit for up to eight hours at one time, and lift up to 20 pounds occasionally and 10 pounds frequently.  It is noted the medical opinion of the state agency reviewing physician also supports Dr. Surber's opinion.  (Exhibits 4F, 6F) In addition, his driving, reading, shopping, housecleaning, visiting others and daily meal preparation are activities which belie allegations of disability.  Inconsistencies give validity to the belief that chronic symptoms and limitations have been somewhat overstated.  When the objective evidence and daily activities are measured against testimony, allegations of disability are less credible.  It is noted he has a consistent work history in the military, as seen in his earnings record (Exhibit 4D), and therefore, his testimony regarding physical and mental limitations, including pain, is given some deference, but only as far as it is supported by the objective evidence.  In addition, he has had episodes of noncompliance with treatment recommendations for rehabilitation drug/alcohol treatment programs and some medication noncompliance, which most likely caused some exacerbation of symptoms.  For example, in August 2011, he stopped taking his anti-depressants and his war nightmares returned.  Further, his testimony indicated knee war injuries and surgeries caused disabling limitations, but he has also reported that due to knee pain, he could no longer run or carry heavy loads, and that backpacking was restricted to afternoon walks with a water bag.  (Exhibits 4E, 12F)

TR 18, *citing* TR 135, 147-54, 155-58, 453-63, 465-73, 563-1087.

As can be seen, contrary to Plaintiff's assertions, the ALJ specifically discussed the evidence, noted the items he found credible and the reasons therefor, and explained his rationale. Moreover, he did not "focus" on a "few activities of daily living" when determining that Plaintiff's subjective complaints were less than fully credible, but rather, properly discussed Plaintiff's reported daily activities as one factor in his evaluation of the objective and testimonial evidence of record. As demonstrated, the ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. *Id.*

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

The ALJ observed Plaintiff during his hearing, assessed the medical and testimonial

evidence of record, reached a reasoned decision, and articulated the basis for that decisoin; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 3. Residual Functional Capacity

Plaintiff maintains that the ALJ "only considered the limited parts of the evidence that supported a finding of not disabled." Docket No. 15 at 11. Specifically, Plaintiff contends that "the ALJ appeared to focus primarily on the physical capabilities of [Plaintiff] and gave minimal instruction as to his mental capabilities." *Id*. In particular, Plaintiff argues that the ALJ did not mention whether Plaintiff could interact appropriately with co-workers and supervisors, tolerate normal work stresses, adapt to changes, or concentrate for "at least 2 hours straight" in an 8-hour workday. *Id.* Plaintiff asserts that the ALJ's "fail[ure] to consider all probative evidence" was erroneous. *Id.*

Defendant responds that Plaintiff's contention that the ALJ considered only the evidence that was unfavorable to Plaintiff "is an empty generalization." Docket No. 17 at 11. Specifically, Defendant contends that the ALJ discussed Plaintiff's mental impairments "at length," including his PTSD, depression, and alcohol dependence, and actually found them to be severe impairments. *Id.* Defendant argues that although the ALJ did not find Plaintiff to be disabled, he properly "discussed the evidence at length, both favorable and unfavorable," and his RFC determination was supported by the evidence of record. *Id*.

Plaintiff reiterates his contentions in his Reply. Docket No. 20.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of

jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c).  With regard to the evaluation of physical

abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and
> extent of your physical limitations and then determine your residual
> functional capacity for work activity on a regular and continuing
> basis.  A limited ability to perform certain physical demands of work
> activity, such as sitting, standing, walking, lifting, carrying, pushing,
> pulling, or other physical functions (including manipulative or
> postural functions, such as reaching, handling, stooping or
> crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

In the case at bar, after evaluating all of the objective and testimonial evidence of record

and Plaintiff's reported level of activity, the ALJ ultimately determined that Plaintiff retained the

Residual Functional Capacity to perform:

> lifting and/or carrying of 20 pounds occasionally and 10 pounds
> frequently; standing and/or walking of 3 hours in an 8 hour
> workday; sitting of 6 hours in an 8 hour workday; no overhead
> reaching; occasional right hand reaching; frequent left hand
> reaching; occasional pushing and/or pulling; occasional operation
> of foot controls with the left foot; frequent operation of foot
> controls with the right foot; no climbing, kneeling and crawling;
> occasional balancing, stooping and crouching; no unprotected
> heights; the avoidance of exposure to dust, odors, fumes,
> pulmonary irritants, temperature extremes, and vibrations; the
> avoidance of exposure to more than moderate noise; he can
> perform simple, multi-step tasks; and have occasional contact with
> the public.

TR 12.

As noted, Plaintiff contends that the ALJ erroneously failed to mention whether he could

interact appropriately with co-workers and supervisors, tolerate normal work stresses, adapt to

changes, or concentrate for "at least 2 hours straight" in an 8-hour workday.  Docket No. 11.

Contrary to Plaintiff's assertion, however, the ALJ discussed the referenced capabilities as follows:

> He said he had no problem getting along with family, friends, neighbors or others, and got along with authority figures "well." He said he had never been fired or laid off from a job due to problems getting along with people.
>
> . . .
>
> He said he handled stress "pretty well," as long as he was on his medications. (Exhibit 5E) In October 2011, his physician reported he had "adequate" attention span and concentration.

TR 17, *citing* TR 159-66, 593.

The ALJ also noted that "the medical opinions by state agency medical consultants indicate moderate limitation in maintaining concentration, persistence or pace, and in social functioning." TR 20, *citing* 473-86, 487-90, 491. The ALJ observed, "These opinions appear to be uncontradicted by any treating psychiatrist or psychologist regarding his ongoing functioning." *Id.*

With regard to Plaintiff's contention that the ALJ improperly focused on his physical, rather than mental, limitations, as has been demonstrated in the first statement of error above, the ALJ discussed Plaintiff's mental impairments and treatment at length. *See* TR 15-16. Additionally, as will be demonstrated in the next statement of error, the ALJ included Plaintiff's mental impairments and subjective complaints related thereto in his detailed discussions of Plaintiff's "activities of daily living," "social functioning," and "concentration, persistence, or pace," and "episodes of decompensation in work or work-like setting." *See* TR 16-18. The ALJ ultimately found that Plaintiff had a mild restriction in his activities of daily living; a moderate limitation in maintaining social functioning; a moderate limitation in maintaining concentration,

persistence, or pace; and has had one or two episodes of decompensation in work or work-like settings, and he incorporated the moderate limitations in his RFC. *See* TR 17-18. The ALJ's decision includes a detailed discussion of Plaintiff's mental impairments; Plaintiff's claims that the ALJ focused more on his physical rather than mental impairments, "gave minimal instruction as to his mental capabilities," and failed to address his abilities to interact appropriately with co-workers and supervisors, tolerate normal work stresses, adapt to changes, or concentrate for "at least 2 hours straight" in an 8-hour workday, are unsupported.

Contrary to Plaintiff's assertion that the ALJ "failed to consider all probative evidence," the ALJ properly considered the objective and testimonial evidence in its entirety, both regarding Plaintiff's physical and mental impairments, and reached a reasoned decision that was supported by the evidence of record. The ALJ's RFC determination was proper. Plaintiff's contentions on this point fail.

**4. Other Severe Impairments**

Plaintiff also argues that the ALJ failed to consider all of his severe impairments. Docket No. 15 at 8. Specifically, Plaintiff contends that the ALJ "failed to recognize the debilitating effects" of his scoliosis, vision impairments, and insomnia (especially as the insomnia relates to his PTSD). *Id.*

Defendant counters that ALJ considered all of these impairments and their effects, and correctly did not find that they constituted severe impairments. Docket No. 17 at 9.

Plaintiff does not address this contention in his Reply. *See* Docket No. 20.

With regard to scoliosis, Plaintiff argues that the Radiology Report from December 3,

2008, which notes Plaintiff's "bony thorax" and "minimal anterior spurring and right convex scoliosis involving the dorsal spine" demonstrates that his scoliosis is a severe impairment. Docket No. 15 at 8, *citing* TR 213.  The ALJ repeatedly referred to this medical record throughout his opinion, demonstrating that he was aware of its findings and considered them. TR 13-20.  Additionally, the ALJ discussed Plaintiff's scoliosis as follows:

> In March 2010, an abdominal CT showed degenerative changes and "mild" scoliosis convex to the left spine (this evidence of mild back abnormality fails to document a significant back impairment). He was taking no medication whatsoever for osteoarthritis (Exhibit 11F), which supports the conclusion that he has not had chronic severe pain due to musculoskeletal complaints and/or impairment.

TR 15, *citing* TR 493-562.

As can be seen, the ALJ considered the medical records pertaining to Plaintiff's scoliosis, and the medical records relating to Plaintiff's scoliosis simply do not demonstrate that his scoliosis has "debilitating effects."  Accordingly, Plaintiff's contention that the ALJ "failed to recognize the debilitating effects" of his scoliosis fails.

Regarding his vision, Plaintiff cites medical records from the VA which indicate myopia and low vision, dated March 10, 2008 and March 6, 2008, respectively, to argue that he has "debilitating effects" resulting from his "vision impairments."  Docket No. 15 at 8, *citing* TR 234, 238.  The ALJ, in his decision, repeatedly referenced the VA records and also Dr. Surber's evaluation from December 9, 2009, which indicated that Plaintiff had: "Visual acuity with glasses: 20/16 in the right eye, 20/20 in the left eye 20/16 with both eyes" (TR 454).  The ALJ's repeated references to the VA records and Dr. Surber's evaluation demonstrate that he was aware of, and considered, these records.  TR 13-20.  Additionally, the ALJ notes Plaintiff's

interest in reading on multiple occasions.  *See e.g.*, TR 17, *citing* 155-58, 159-66.

The ALJ considered the records relating to Plaintiff's vision, and there is nothing in those records to demonstrate that he has "debilitating effects" relating to his "vision impairments." Accordingly, Plaintiff's contention that the ALJ "failed to recognize the debilitating effects of [his] vision impairments" fails.

Finally, with regard to his insomnia, Plaintiff contends that VA records show that he suffers "flashbacks, nightmares, insomnia, and hyperarousal due to his service in Vietnam." Docket No. 15 at 8, *citing* TR 200-201.  Concerning Plaintiff's insomnia, the ALJ stated:

> Trazodone helped him sleep without bad dreams and he awoke without recollection.  He had self-increased Trazodone to 300 mg to maintain five and six hours sleep at night.  His mood was 'fine.'

TR 16, *citing* TR 157.

The ALJ noted that Plaintiff's sleep problems returned when he refrained from taking his medication:

> In addition, he has had episodes of noncompliance with treatment recommendations for rehabilitation drug/alcohol treatment programs and some medication noncompliance, which most likely caused some exacerbation of symptoms.  For example, in August 2011, he stopped taking his anti-depressants and his war nightmares returned.

TR 18, *citing* TR 563-1087.

The ALJ further stated:

> [Plaintiff] reported he had taken Trazodone for three or four years to aid sleep and Fluoxetine 80 mg daily for three to four years for PTSD.  He said Fluoxetine reduced his nervousness and Trazodone

let him sleep without dreams.

TR 19, *citing* TR 155-58.

As can be seen, the ALJ considered Plaintiff's insomnia. Moreover, as has been discussed in the statements of error above, the ALJ properly considered Plaintiff's PTSD, as well as the credibility of his subjective complaints. The records simply do not support Plaintiff's assertion that he suffered from "debilitating effects" resulting from his insomnia, "especially as it relates to his PTSD."

As has been demonstrated, the ALJ properly considered the entire record when determining which of Plaintiff's impairments were severe. The ALJ addressed Plaintiff's scoliosis, low vision, and insomnia, and Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


_____
E. CLIFTON KNOWLES
United States Magistrate Judge